UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| JOSEPH HATLEY, individually and on behalf of all others similarly situated,<br><br>v.<br><br>APACHE CORPORATION. | Case No.: 7:20-cv-00104<br>Collective Action (29 U.S.C. § 216(b)) |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Apache does not pay overtime to its rig clerks. Instead, Apache pays these workers a day rate with no overtime compensation, even though they work many hours in excess of forty hours per week. Because this practice results in non-payment of overtime wages to Joseph Hatley and other similarly situated workers, Hatley brings this collective action to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) ("FLSA").

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Hatley's claim occurred in this district.

### THE PARTIES

4. Hatley was employed by Apache as a rig clerk.

5. Apache is a multi-billion-dollar oil and gas company with operations in different countries around the world and in multiple states in this country.

6. At all relevant times, Apache's gross annual revenues exceeded $5 billion.

7. As part of its operations, Apache drills wells.

8. Apache employed and/or jointly employed Hatley and the Class Members as rig clerks to record all the activities on the rig site, control logistics, order trucks, and coordinate set up and take down of rigs.

9. Hatley brings this action on behalf of himself and all other similarly situated rig clerks who were paid a day rate with no overtime pay who and worked for Apache.

10. Apache paid these workers a day rate, without overtime pay required by the FLSA.

11. Hatley's written consent to be a party plaintiff is attached as Exhibit 1.

12. Hatley seeks to represent a class of similarly situated day rate workers under the FLSA pursuant to 29 U.S.C. § 216(b) that is defined as:

> **All current and former rig clerks working for Apache and who were paid a day rate during the last three years (the "Class Members").**

## FACTS

13. At all times hereinafter mentioned, Apache has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14. At all times hereinafter mentioned, Apache has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

15. At all times hereinafter mentioned, Apache has been, or has been part of, an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1) because it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than the statutorily required $500,000 (exclusive of excise taxes at the retail level which are separately stated).

16. Apache's employees handle, sell, use, or work on goods or materials that were produced for interstate commerce or that were transported in interstate commerce. These items include vehicles, telephones, oilfield equipment, office equipment, computers, and safety gear.

17. Hatley and the Class Members performed duties for Apache that were integral to its operations, including recording the activities of drilling rigs.

18. The duties of rig clerks like Hatley and the Class Members do not require a college degree.

19. Hatley was employed by Apache from February 2017 to February 2018.

20. Apache paid Hatley and the Class Members a day rate with no overtime premium for hours worked in excess of 40 in a workweek.

21. Throughout Hatley's employment with Apache, Apache paid him on a day rate basis.

22. Hatley and the Class Members work for Apache under its day rate pay scheme.

23. If Hatley and the Class Members did not work, they did not get paid.

24. Hatley and the Class Members receive a day rate.

25. Hatley and the Class Members do not receive overtime pay.

26. This is despite the fact that Hatley and the Class Members often work 14 to 16 or more hours per day, for rotating shifts of 14 days on duty and 14 days off.

27. Apache required Hatley and the Class Members to attend daily meetings at 8:00 a.m. with their Apache supervisors.

28. Apache required Hatley and the Class members report to their supervisors every day while on duty at 5:00 a.m. and 2:00 p.m.

29. Apache's engineers directly supervised Hatley and the Class Members.

30. Apache set the work schedules for Hatley and the Class Members.

31. Apache assigned Hatley and the Class Members to the particular rigs where they worked.

32. Hatley and the Class Members were required to follow Apache's protocols.

33. Apache required Hatley and the Class Members use Apache's computer systems and databases. They were not allowed to use their own equipment, not even thumb drives.

34. Hatley and the Class Members were prohibited by Apache from working for other companies on their days off.

35. Moonlighting was grounds for immediate termination and Apache enforced this policy.

36. Hatley and the Class Members received a day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

37. Hatley and the Class Members are not employed on a salary basis.

38. Hatley and the Class Members do not, and never have, received guaranteed weekly compensation irrespective of the days worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

39. Hatley and the Class Members work in accordance with the schedule set by Apache.

40. Hatley's work schedule is typical of the Class Members.

41. Apache controls Hatley's and the Class Members' pay.

42. Likewise, Apache controls Hatley's and the Class Members' work.

43. Apache requires Hatley and the Class Members follow Apache's policies and procedures.

44. Hatley and the Class Members' work must adhere to the quality standards put in place by Apache.

45. Hatley and the Class Members are part of a permanent workforce employed to perform all of Apache's rig clerk work.

46. Apache provides all meaningful capital investment required to drill wells and perform the rig clerk function. Hatley and the Class Members do not provide anything beyond what employees ordinarily provide to do their work.

47. Hatley and the Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

48. As rig clerks Hatley and the Class Members performed similar duties, such as record all the activities on the rig site, control logistics, order trucks, and coordinate set up and take down.

49. Hatley and the Class Members provide daily reports to Apache personnel.

50. At all relevant times, Apache (and/or its clients) maintained control over Hatley and the Class Members via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

51. Hatley and the Class Members do not have the power to hire or fire any employees.

52. Hatley's working relationship with Apache is similar to Apache's relationship with the Class Members

53. Apache knew Hatley and the Class Members worked more than 40 hours in a week.

54. Apache knew, or showed reckless disregard for, whether the Class Members were entitled to overtime under the FLSA.

55. Nonetheless, Apache failed to pay Hatley and the Class Members overtime.

56. Apache willfully violated the FLSA.

## CAUSE OF ACTION

57. By failing to pay Hatley the Class Members overtime at one-and-one-half times their regular rates, Apache violated the FLSA's overtime provisions.

58. Because Apache knew, or showed reckless disregard for whether, its pay practice violated the FLSA, Apache owes these wages for the past three years.

59. Apache owes Hatley and the Class Members an amount equal to the unpaid overtime wages as liquidated damages.

60. Hatley and the Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## RELIEF SOUGHT

61. WHEREFORE, Hatley seeks relief against Apache as follows:

   a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. Judgment pursuant to Section 16(b) of the FLSA finding Apache liable for unpaid back wages due to Hatley and the FLSA Class Members and for liquidated damages equal in amount to their unpaid compensation;

   c. Judgment awarding attorneys' fees, costs and pre- and post-judgment interest; and

   d. All such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: **/s/ David I. Moulton**
_____
Richard J. (Rex) Burch
Texas Bar No. 24001807
David I. Moulton
Texas Bar No. 24051093
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com


Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone:     (713) 352-1100
Telecopier:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Attorneys for Plaintiff**